## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**DAVID WEINHOFFER, as liquidating**         **CIVIL ACTION**
**Trustee of OFFSHORE SPECIALTY**
**FABRICATORS LLC**

**VERSUS**         **NO. 19-11175**

**DAVIE SHORING, INC.**         **SECTION: D (1)**

### AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter was tried before the Court without a jury from August 19–21, 2020.[1]  Following the trial, the Court orally issued its Findings of Fact and Conclusions of Law and subsequently entered judgment in favor of Plaintiff; Plaintiff appealed.[2]  On February 11, 2022, the United States Court of Appeals for the Fifth Circuit reversed the judgment of this Court and remanded the case for proceedings consistent with its opinion.[3]  Following a conference with the parties, it was agreed that the matter would proceed to re-trial on the prior trial testimony and evidence as well as the post-trial briefs filed by each party for consideration by the Court.[4] Plaintiff also filed a reply brief with leave of Court.[5]

---

[1] *See* R. Docs. 113, 114, 115.
[2] R. Docs. 117, 118.
[3] R. Doc. 129.
[4] *See* R. Doc. 136, Post-Trial Brief of Plaintiff; R. Doc. 137, Post-Trial Brief of Defendant.
[5] R. Doc. 141. While Defendant did not seek leave to file a Reply brief, it filed an Opposition to Plaintiff's motion for leave to file a reply brief. *See* R. Doc. 139.  Though styled as "Opposition to Plaintiff's Ex Parte Motion for Leave to File Memorandum in Reply to Defendant's Post-trial Memorandum," the brief is, in effect, Defendant's Sur-Reply brief as Defendant spends over 10 of the 12 pages making substantive arguments in response to Plaintiff's reply brief. The Court has considered it as such.

The Court has again carefully considered the testimony of all of the witnesses and the exhibits entered into evidence during the trial,[6] the record in this matter, and the guidance of the United States Court of Appeals for the Fifth Circuit. Pursuant to Rule 52 of the Federal Rules of Civil Procedure, the Court enters the following Findings of Fact and Conclusions of Law.  To the extent that any finding of fact may be construed as a conclusion of law, the Court hereby adopts it as such.  To the extent any conclusion of law may be construed as a finding of fact, the Court hereby adopts it as such.

## I.    FINDINGS OF FACT

1.    Plaintiff ("Plaintiff" or "Weinhoffer") is the duly authorized liquidator of Offshore Specialty Fabricators ("OSF"), by virtue of Order issued in *In re: Offshore Specialty Fabricators, LLC*, debtor, No. 17-35623, United States Bankruptcy Court, Southern District of Texas, Houston Division.[7]

2.    On April 23, 2018, the United States Bankruptcy Court, Southern District of Texas, Houston Division issued an order approving the sale via auction of a 205-man housing Module owned by OSF (the "Module").[8]

---

[6] Consistent with the Opinion from the United States Court of Appeals for the Fifth Circuit, the Court has excluded consideration of Exhibit 41.  Further, the Court has not considered or taken judicial notice of the Wayback Machine.

[7] Joint Stipulation of Uncontested Material Facts, R. Doc. 109.

[8] Trial Exhibit 9, Revised Order Approving Sale Procedures in Connection with the Sale of the Accommodations Unit.

3.  On April 24, 2018, Plaintiff entered into an agreement with Henderson Auctions ("Henderson"), a division of J.A.H. Enterprises, LLC, to conduct an auction of the Module.[9]

4.  The Module was a housing unit removed by OSF from an offshore structure.  The Module, when new, was valued at an amount in excess of $10 million.  At the time of the auction, the Module was described as being in very good condition.[10]

5.  The Module was advertised by Henderson on its auction website beginning some weeks ahead of the auction which was scheduled to take place on May 16, 2018.

6.  On May 16, 2018, the Module was placed for sale via online auction.[11]

7.  Warren Davie, owner of Defendant Davie Shoring, Inc., was one of the participants in the auction.  Davie was an experienced bidder, who testified he had participated in 10–20 similar auctions of large-scale equipment prior to this auction, including auctions with Henderson Auctions.  At the time, Davie had owned Davie Shoring for approximately 27 years.[12]

8.  Davie had bid on auctions with Henderson Auctions many times prior to this auction.[13]

---

[9] Trial Exhibit 1, Auction Agreement.  Also stipulated to between the parties. R. Doc. 109.
[10] Joint Stipulation of Uncontested Material Facts, R. Doc. 109.
[11] *Id.*
[12] Trial Testimony of Warren Davie, August 19, 2020.
[13] *Id.*

9.      Davie and Henderson did not enter into any written agreement prior to the auction.

10.     Davie placed the highest bid of $177,500 during the auction via telephone with Jeff McCon of Henderson Auctions.[14]

11.     The bid included an obligation to pay a buyer's commission of 10%, which amounted to $17,750, and to remove the Module from its then location, which was on property owned by Offshore Express (herein, "OE"), a former related company to OSF.[15]

12.     As further set forth in Trial Exhibit 13, the module was sold "'as is/where is,' with No Guarantee or Warranties. Inspection prior to bidding is recommended and available. Buyer is responsible for all freight, handing costs, and taxes where applicable."[16]

13.     Davie testified that he was aware those were the terms of the auction and that as the high bidder he was responsible for moving the module from the property within 60 days.[17]

14.     Davie further testified that he was aware that he was responsible for paying the 10% Buyer's Premium if his bid was the high bid.[18]

15.     Following the acceptance of Davie's high bid, Weinhoffer instructed Defendant to add OSF and OE as additional insured on its Certificate of

---

[14] Joint Stipulation of Uncontested Material Facts, R. Doc. 109.
[15] Trial Exhibit 13, Multiple Story Crew Facility Online Auction Only.  Also stipulated to between the parties. R. Doc. 109.
[16] Joint Stipulation of Uncontested Material Facts, R. Doc. 109.
[17] Trial Testimony of Warren Davie, August 19, 2020.
[18] *Id.*

Insurance and Defendant complied.  The Certificate was dated May 16, 2018, the date of the auction.[19]

16.     Prior to his bid, Davie inspected the Module on two separate occasions.[20]

17.     At the time of his bid, Davie was on top of the structure.

18.     At no time prior to his bid did Davie arrange to have the module inspected by any expert in the business of moving equipment of this nature, nor did he ask anyone at Henderson or OSF what would be required to move the Module.[21]

19.     Only after he placed the highest bid did Davie consult with experts regarding how to move the module.[22]

20.     These experts included Brett Berard and Robert Baker. Both experts advised Davie that there would be significant logistical hurdles to move the module within sixty days.

21.     The experts further advised Davie that it would be very expensive to move the module, with Berard advising Davie that it would cost approximately $400,000.00 to move the module.[23]

22.     Davie did not make any payment to Henderson Auctions or Weinhoffer or extend any offer to pay any amount in satisfaction of his bid.[24]

---

[19] Joint Stipulation of Uncontested Material Facts, R. Doc. 109.
[20] *Id.*
[21] *Id.*
[22] Trial Testimony of Warren Davie, August 19, 2020.
[23] *Id.*
[24] Joint Stipulation of Uncontested Material Facts, R. Doc. 109.

23.  On June 4, 2018, Weinhoffer sent an email to McCon inquiring about payment for the Module.  Weinhoffer advised McCon that he "already docketed the sale with the federal bankruptcy court."  McCon responded that Henderson Auctions was "still in the process of trying to collect from the buyer."  Weinhoffer responded that he has "the courts to answer to quickly."[25]

24.  On June 7, 2018, McCon responded to an email from Weinhoffer informing Weinhoffer that the owner of Henderson Auctions recently spoke with Davie and was "pushing for payment."[26]

25.  On July 2, 2018, McCon responded to an inquiry from Weinhoffer about the status of payment telling Weinhoffer that he had no contact with Davie and that he considered him a "bad bidder" and that he did not "look for him to pay."  McCon then asked Weinhoffer whether he would "want to try again with another Auction."[27]

26.  On July 2, 2018, Weinhoffer responded to McCon's July 2, 2018 email, asking McCon if he had contacted any of the other bidders for interest in purchase the Module.  McCon responded that he did send an email, "but didn't push it in hopes of collecting from the buyer."[28]

27.  On August 22, 2018, Weinhoffer emailed McCon that he would "make the property available for removal of the module if Davie Shoring

---

[25] Trial Exhibit 2.
[26] *Id.*
[27] *Id.*
[28] *Id.*

remains interested." Weinhoffer also advised that Davie "would need to come up with a plan and timeline to have it removed." McCon responded that he would send this information to Davie.[29]

28.   On August 24, 2018, Weinhoffer emailed McCon asking if Davie had responded to McCon's email. McCon replied that he had not heard from Davie.[30]

29.   On August 24, 2018, the Official Committee of Unsecured Creditors of Offshore Specialty Fabricators, LLC's First Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code was filed in the OSF bankruptcy proceeding (known as the "OSF Liquidation Plan").[31]

30.   A First Amended Disclosure Statement in Support of the Plan of Liquidation of the Official Committee of Unsecured Creditors of Offshore Specialty Fabricators, LLC Under Chapter 11 of the Bankruptcy Code (the "Disclosure Statement") was filed in the OSF Bankruptcy Case on August 24, 2018.[32]

31.   David Weinhoffer ("Weinhoffer") was named liquidating Trustee of Offshore Specialty Fabricators, LLC.

32.   Weinhoffer testified that he had an obligation as Trustee to remove the Module which was not on property owned by OSF. Weinhoffer further testified that he had a responsibility to reduce OSF's liabilities, which

---

[29] *Id.*
[30] *Id.*
[31] Joint Stipulation of Uncontested Material Facts, R. Doc. 109.
[32] *Id.*

included the Module. OSF subsequently transferred the module to OE on December 5, 2018.

33. The Court found Weinhoffer's testimony credible and his background and credentials untarnished.

34. OE thereafter had Henderson Auctions conduct a second auction in January 2019 in which the Module sold for $6,000.00.[33]

35. Davie was aware that Henderson Auctions was trying to re-sell the Module.[34]

36. On June 12, 2019, Plaintiff filed suit against Defendant alleging Failure to Pay the Bid Price (Count 1), Breach of Sale Contract (Count 2), and Detrimental Reliance (Count 3).[35]

## II.   CONCLUSIONS OF LAW

1. The Court finds that jurisdiction is proper pursuant to 28 U.S.C. § 1334, as this case relates to the assets of OSF's bankruptcy, and because the Trustee is acting pursuant to powers granted to him by the Bankruptcy Code. 28 U.S.C. § 1334(b).

2. The Court also finds that it has jurisdiction under 28 U.S.C. § 1332, as the parties are completely diverse and the amount in controversy exceeds $75,000.

---

[33] *Id.*
[34] Trial Testimony of Warren Davie, August 19, 2020.
[35] The Court granted Defendant's Motion to Dismiss Count 1. *See* R. Doc. 105.

3.    The Court finds that venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claim occurred in the Eastern District of Louisiana.

4.    Louisiana law applies to this matter.

5.    The Court finds that Plaintiff, David Weinhoffer, was made the duly authorized liquidator of a 205-man housing Module which was part of the bankruptcy estate of Offshore Specialty Fabricators, LLC by virtue of Order issued in *In re: Offshore Specialty Fabricators, LLC*, debtor, No. 17-35623, United States Bankruptcy Court, Southern District of Texas, Houston Division.

6.    Pursuant to an Auction Agreement executed with Plaintiff,[36] David Weinhoffer, as liquidating Trustee for OSF, the Court finds that Henderson Auctions was, at all pertinent times, Plaintiff's mandate or agent authorized to conduct an auction of the Module owned by OSF.

7.    The Court finds that Henderson did advertise and conduct a public auction for sale of the Module on May 16, 2018.[37]

8.    The Court finds Davie participated in the auction after first conducting two separate inspections of the Module.

9.    The Court further finds Davie placed the highest bid for the Module and therefore became the purchaser of the Module pursuant to La. R.S. 9:3157.

---

[36] Trial Exhibit 1.
[37] Joint Stipulation of Uncontested Material Facts, R. Doc. 109.

10.  Upon making the highest bid, Davie became the owner of the Module, the sale was completed, and the contract between Davie and Henderson Auctions, as the agent for Weinhoffer, became subject to the same rules which govern an ordinary contract of sale. La. R.S. 9:3158.

11.  The essential elements of a breach of contract claim are (1) the obligor's undertaking an obligation to perform, (2) the failure of the obligor to perform the obligation; and (3) the failure to perform resulted in damages to the obligee. *Favrot v. Favrot*, 2010-0986 (La. App. 4 Cir. 2/9/11), 68 So. 3d 1099, 1108–09, *writ denied*, 2011-0636 (La. 5/6/11), 62 So. 3d 127.

12.  Davie Shoring, Inc. raises several affirmative defenses, including arguing it did not enter a valid contract at all.

13.  "A party defendant who asserts an affirmative defense bears the burden of proof thereof." *New Amsterdam Cas. Co v. Culotta*, 230 So.2d 339, 341 (La. App. 4 Cir. 1970).

14.  Defendant first argues impossibility. Under Louisiana law, there must be a "fortuitous event" for impossibility to dissolve a contract. La. C.C. art. 1876. A "fortuitous event" is "one that, at the time the contract was made, could not have been reasonably foreseen." La. C.C. art. 1875. Here, the problems defendant has identified with the Module's substructure and/or with moving the Module were reasonably foreseeable at the time the parties entered the contract. The Court

therefore finds that no fortuitous event occurred here and rejects the defense of impossibility.

15.     Defendant next argues the affirmative defense of "estoppel, extinguishment of the obligation, and failure of consideration." A person who by his deed or conduct has induced another to act in a particular manner will not be permitted to adopt an inconsistent position, attitude or course of conduct and thereby cause loss or injury to the other. *Humble Oil & Refining Co. v. Baudoin*, 154 So. 2d 239, 242–43 (La. App. 3 Cir. 1963). Estoppels are not favored in the law. *G.J. Deville Lumber Co., Inc. v. Chatelain*, 308 So. 2d 428, 432 (La. App. 3 Cir. 1975). The elements necessary for the application of equitable estoppel are not present here. Mr. Davie was not induced into anything—Davie admitted to knowing the terms of the auction and had ample opportunity to inspect the module prior to purchase. The Court finds that Davie has failed to establish the affirmative defense of estoppel.

16.     Davie also asserts the affirmative defense of extinguishment. Louisiana Civil Code article 1881 states that novation takes place when, by agreement of the parties, a new performance is substituted for that previously owed, or a new cause is substituted for that of the original obligation. If any substantial part of the original performance is still owed, there is no novation. The Court finds that Davie has not established that Plaintiff ever intended to discharge Davie of its debt for

the auction.  Mr. Weinhoffer credibly testified that he always intended to pursue Davie for the amount owed to the bankruptcy estate.  The Court finds there is no clear and unequivocal evidence of novation.

17. The Defendant also raises the defense of failure of consideration.  The defense of failure of consideration concedes that there was consideration for the instrument in its inception but alleges that the consideration has wholly or partially ceased to exist.  *Smith v. Louisiana Bank and Trust Company*, 272 So. 2d 678, 683 (La. 1973).  Failure of consideration pertains to events which occur subsequent to the execution of a note and that involve some failure of the payee to perform the obligation for which the instrument was given.  Here, Defendant had ample time to inspect the structure before his decision to purchase it.  Defendant understood he had the obligation to move the structure when he entered the contract.  Under these circumstances and the facts of this case, there is no failure of consideration.

18. Next, Defendant asserts the defense of error or mistake.  "Error vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party."  La. C.C. art. 1949.  The Court considers error, rather than mistake, the proper legal framework under which to consider this defense because OSF, as owner of the module, knew or should have known about the difficulties with moving the structure.

Louisiana courts have declined to rescind contracts for error where the error was inexcusable. *Peironnet v. Matador Resources Company,* 144 So. 3d 791, 810 (La. 2013). "An error made by a professional person concerning a matter within his field of expertise would no doubt be considered inexcusable." *Id.* (quoting Saul Litvinoff, *Vices of Consent, Error, Fraud, Duress and an Epilogue on Lesion*, 50 La. L. Rev. 1, 36 (1989)). Here, any error was not excusable on the part of Warren Davie. Davie testified that he engaged in between 10 to 20 auctions of construction equipment prior to the auction in question.  He further testified that he was the owner of Davie Shoring for over 27 years. Warren Davie also testified that he physically inspected the Module before purchasing it.  He was physically at the site when he made his bid.  He understood he would have the obligation to move it, but made the decision on his own, with that knowledge, to place the bid without the benefit of any further or outside investigation of experts.  Neither of these were done before the contract was completed.  The defense's own expert, Scott Gros, stated that Defendant should have had a professional review the Module and substructure before commencing bidding.  The Court therefore rejects Defendant's arguments of error and mistake.

19.    Finally, in their post-trial briefing, the Defendant argues that no contract was formed at all because there was no "meeting of the

minds."[38]  A contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished. La. C.C. art. 1906. Where there is no "meeting of the minds" between the parties, there is no consent, thus no enforceable contract. *Ricky's Diesel Serv., Inc. v. Pinell*, 2004-0202 (La. App. 1 Cir. 2/11/05), 906 So. 2d 536, 538.

20.  Defendant contends that because he relied on the disputed terms in the now-excluded Exhibit 41 relating to the time period in which the Module had to be moved and the purported 20% Liquidated Damages clause, there was no "meeting of the minds" as to the terms of the contract between Plaintiff and Defendant.  That is, because the parties dispute whether the terms specified in Exhibit 41 were part of the terms of the agreement, there was no valid contract as there was no "meeting of the minds."

21.  At trial, Davie testified that he saw a Liquidated Damages clause in the Auction terms on the Henderson website prior to the auction and that that Liquidated Damages clause limited his liability to 20% of the bid price or a minimum of $500.00, whichever is greater.

22.  Defendant has provided no evidence other than Davie's uncorroborated testimony to support that claim.[39]

---

[38] R. Doc. 137 at pp. 8–10.
[39] The Court has excluded consideration of Trial Exhibit 41 and the Wayback Machine.

23.     Jeff McCon, a Henderson Auctions employee who placed the bid for Davie, testified that he was unaware of any Liquidated Damages clause in the Henderson terms for the auction.[40]

24.     Plaintiff's Trustee, Mr. Weinhoffer, who the Court found credible, testified that he was aware of the auction terms, but that he, too, was unaware of any Liquidated Damages clause in the Henderson Auction terms.[41]

25.     Defendant did not provide any evidence, nor is there any in the Court record, that Defendant made any reference to or initiated any communication with Henderson Auctions regarding his contention that there existed a 20% Liquidated Damages clause until the initiation of the lawsuit.

26.     The Court finds that Davie's uncorroborated testimony fails to prove the existence of a Liquidated Damages clause limiting his liability.

27.     The Court further finds that even if Davie actually believed there to be additional terms to the contract at the time of contracting, there was still a sufficient "meeting of the minds" to form a valid and enforceable contract.

28.     "[A] party cannot claim no meeting of the minds when he knows essential terms." *Lagraize v. Basler*, 20-39 (La. App. 5 Cir. 9/9/20), 304 So. 3d 102, 112, *writ denied*, 2020-01257 (La. 12/22/20), 307 So. 3d 1038

---

[40] Trial Testimony of Jeff McCon, August 19, 2020.
[41] Trial Testimony of David Weinhoffer, August 19, 2020.

(citing *Chaisson v. Chaisson*, 29,243 (La. App. 2 Cir. 2/26/97), 690 So.2d 899, 901). "The thing, the price, and the consent of the parties are requirements for the perfection of a sale." La. C.C. art. 2439.

29.    That the parties dispute the existence of certain terms of their agreement does not mean that there was no "meeting of the minds" as to the essential terms the contract.

30.    The terms of the Agreement were that the Module was being sold "AS IS/WHERE IS," that the Module had to be removed within sixty days of purchase at the purchaser's cost, and that the buyer pay the bid amount plus a 10% buyer's premium.[42]  Davie testified that he was aware of the terms before placing his bid.[43]

31.    Davie testified that he understood that he was bound by his bid to Henderson Auctions.[44]

32.    In sum, Davie was aware of the object that he was purchasing, the price of his bid, the 10% buyer's premium that he would have to pay on top of the bid price, and his obligation to move the Module at his own expense.[45]  Davie was thus aware of every material element of the contract.

33.    That Davie believed, mistakenly or not, that the contract contained a Liquidated Damages clause does not mean that there was no "meeting

---

[42] Joint Stipulation of Uncontested Material Facts, R. Doc. 109.
[43] Trial Testimony of Warren Davie, August 19, 2020.
[44] *Id.*
[45] *Id.*

of the minds." Davie has not provided any evidence or testimony that the existence of such term was material to his bid or that he would not have bid on the Module but for the existence of the Liquidated Damages provision. Defendant's argument suggests that Davie placed his bid contingent on him being subject to a cap on potential liability in the event that he chose to default on the bid. The Court will not presume that a person makes an offer to purchase an object with the intent to default on that offer. Indeed, Davie testified that his intent when placing the bid was to remove the Module for his use elsewhere.

34. Because the evidence shows that the Defendant and the Plaintiff were mutually aware of the thing to be purchased and the price at which it was to be purchased, and that the parties outwardly manifested their intent to contract, the Court finds that there was a meeting of the minds and the parties in this suit entered into a valid contract.

35. In a contract of sale, the buyer is the obligor bound to give the price in money in favor of the seller who is the obligee. La. C.C. art. 2549.

36. The Court finds that Davie breached its contract with Henderson Auctions as the agent for Weinhoffer by: (1) failing to pay to Henderson his bid amount of $177,500.00 plus the 10% Buyer's premium of $17,750.00; and (2) by failing to remove the Module from the location on which it was located within 60 days.

37.   The Court has found that a contract between Plaintiff and Defendant was formed with the terms as set forth herein.

38.   In post-trial briefing, Defendant argues that if the Court finds that a valid contract exists between the Plaintiff and Defendant, that the Plaintiff and Defendant should be bound by the "Auction Agreement," Trial Exhibit 1, signed by Plaintiff, as "Owner," and Henderson Auctions, as "Auctioneer," which "provides for only two exclusive remedies (*i.e.*, return of the deposit and specific performance.)."[46] Defendant contends that Plaintiff's remedies are limited to the terms of that agreement.

39.   The Court rejects Defendant's argument that the parties in this suit are bound by the Auction Agreement as it is undisputed that the Auction Agreement was entered into between Plaintiff and Henderson Auctions; only one of the parties to the Auction Agreement (Plaintiff) is a party to this suit.[47]   Defendant was not a party to that agreement.   A party cannot be bound by an agreement to which it is not a party. *Eddie Tourelle's Northpark Hyundai, LLC v. Hyundai Motor America Corp.*, No. CV 18-11757, 2019 WL 2176948, at *2 (E.D. La. May 20, 2019) (citing *B-G & G Investors VI, L.L.C. v. Thibaut HG Corp.*, 985 So. 2d 837, 842 (La. App. 4 Cir. 2008)).

---

[46] R. Doc. 137 at p. 3.
[47] Joint Stipulation of Uncontested Material Facts, R. Doc. 109.

40.  The Auction Agreement binds Plaintiff and Henderson Auctions and controls the rights and remedies of the parties vis-à-vis each other; it does not limit Plaintiff's remedies against the Defendant, a non-party. The agreement specifies and limits Plaintiff's remedies against Henderson Auctions in the event of default by a buyer.  It is uncontested that Defendant is not a party to that agreement and never entered any agreement with the Plaintiff regarding Plaintiff's rights against Henderson Auctions in the event of default.  There is no evidence that Plaintiff forfeited any legal rights to sue Defendant in contract by signing the Auction Agreement with a third-party.  Defendant, a non-party, cannot invoke the contractual language of the Auction Agreement to limit Plaintiff's remedies against Defendant.

41.  Accordingly, the Court finds that the Auction Agreement between Henderson Auctions and Plaintiff does not deprive Plaintiff of the remedy sought here against the Defendant.

42.  Based on the foregoing analysis, the Court finds that defendant Davie Shoring, Inc. is in breach of its contract to purchase the Module.  The remaining question is damages.

43.  An obligee must make reasonable efforts to mitigate the damage caused by the obligor's failure to perform.  When an obligee fails to make these efforts, the obligor may demand that the damages be accordingly reduced. La. C.C. art. 2002. "The injured person need not make

extraordinary efforts or do what is unreasonable or impracticable in his efforts to minimize damages; reasonable diligence and ordinary care are all that is required to allow full recovery of all damages caused by the defendant's wrongful activity." *Unverzagt v. Young Builders, Inc.*, 252 La. 1091, 1097 (1968) (quoting 22 Am. Jur. 2d *Damages* § 354).

44. Failure to mitigate damages is an affirmative defense for which the burden of proof is on the party asserting the defense. *Chouest v. Chouest*, 2018-1484 (La. App. 1 Cir. 12/19/19), 292 So. 3d 68, 87 (citing *Ciolino v. First Guar. Bank*, 2012-2079, 2012-2080 (La. App. 1 Cir. 10/30/13), 133 So.3d 686, 697).

45. The Court finds that Defendant has proven that Plaintiff failed to mitigate its damages.  The Court first notes the unique circumstances of the sale of the Module.  Unlike the case in an ordinary sales transaction, Plaintiff's sale of the Module occurred in the context of a bankruptcy reorganization plan whereby Weinhoffer sought to sell certain assets on behalf of the debtor, OSF.  Indeed, Plaintiff's ability to sell the Module was controlled, to a certain extent, by the bankruptcy court.  The Court recognizes that what is considered to be reasonable under such circumstances may differ from a situation not involving bankruptcy.

46. Nevertheless, the Court finds that Plaintiff failed to act with "reasonable diligence and ordinary care."   The evidence reflects that McCon

informed Weinhoffer in July 2018 that Henderson Auctions could place the module up for a second auction. Plaintiff chose not to do so. Weinhoffer testified that he chose not to re-auction the Module because "there really wasn't that much interest to try to run an auction again when there's no buyers because [the Module]'s so specialized." This ignores that when the Module was auctioned the first time, the evidence reflects that there was market interest of at least two other bidders and a competitive bidding process. Further, although Weinhoffer inquired about whether McCon had had any contact with the other bidders, Weinhoffer made no further attempt to contact the bidders or to see if the bidders were still interested in purchasing the Module. McCon contacted the second highest bidder but not the third highest bidder to see if they were interested in purchasing the Module. McCon was unable to reach any other bidders. While the Court finds it entirely reasonable for Plaintiff to have waited some amount of time to see if Defendant, a known bidder with Henderson Auctions, would pay, once it became apparent that Defendant was unwilling to follow through with its promise to pay, Plaintiff made no other attempts to sell or dispose of the Module, whether through a second auction with Henderson Auctions or by other means. The evidence reveals that Jeff McCon of Henderson Auctions emailed Weinhoffer on July 2, 2018 and stated ". . . unfortunately we have had no contact with Warren [Davie]. I am going

to consider him a bad bidder and I do not look for him to pay. Please let me know if you want to try again with another auction."[48] There is no evidence that Plaintiff made any effort to sell or dispose of the Module until December 5, 2018 when it transferred the Module to OE at no cost to OE. The Court recognizes the difficult situation that Defendant put Plaintiff in by failing to pay Plaintiff as promised and by failing to properly communicate with Plaintiff about its intentions, or lack thereof, regarding payment. Nevertheless, the Court finds that Plaintiff unreasonably failed to take proper measures to mitigate its damages from the breach by failing to take any action to find another potential buyer for the Module.

47. Because the Court finds that Plaintiff failed to mitigate its damages, the Court must determine by how much, if any, Plaintiff's damages should be reduced.

48. The Court finds that Plaintiff's damages should be reduced by $6,000, the amount that the Module sold for at auction in January 2019. The second auction was also run by Henderson Auctions on their website allowing for similar advertising and a similar range of bidders, including Defendant, if it so chose, to view and bid on the Module as in the first auction. Although that auction occurred several months after Defendant's breach, that is the closest data point to what the fair market

---

[48] Trial Exhibit 2.

value of the Module would be were Plaintiff to have attempted to resell it rather than transferring it to OE on December 5, 2018 at no cost. Defendant has not provided any evidence to support any other value. Further, any other value would be entirely speculative.[49]

49.    In post-trial briefing, Defendant argues that the damages awardable to Plaintiff should be reduced by $150,000 because that is the value that Plaintiff ascribed to the Module in the filings before the bankruptcy court. However, that figure is based on the amount that Defendant bid on the Module for and reflects the estimated amount of money that Plaintiff anticipated it would be receiving from Defendant. Thus, that figure only demonstrates that Plaintiff believed that the fair market value of the Module was what Defendant offered to pay; there is no evidence that this amount was Plaintiff's belief about what the fair market value of the Module would be if they had to reauction it at a later date, nor was there any evidence introduced by Defendant as to the

---

[49] The Defendant contends that the holding in *Electrodata Manufacturing Corp. v. Domed Stadium Hotel, Inc.* does not allow for the Court to consider the value of a second sale where an aggrieved seller gives away an item for no value in a sham sale. 362 So. 2d 1122 (La. Ct. App.), *writ denied*, 365 So. 2d 825 (La. 1978). Defendant's argument misconstrues the facts of that case and those of the instant matter. In *Electrodata Manufacturing*, the Court held that where a seller claiming breach of contract on the part of the buyer sells an object in an attempt to mitigate his damages at a commercially unreasonable price, the seller cannot recover for the total of his alleged damages. *Id.* at 1126–27. But there is no indication here that the $6,000 sale at the reauction was a junk sale or sold at a commercially unreasonable price. After all, at an auction, the seller has only limited control over the actions of the bidders and the final price. That $6,000 is small in comparison to the $177,500 that Defendant bid for the Module several months earlier does not imply that the $6,000 sale is a sham and there is no evidence in the record to support such. That was, apparently, all the market could bear. Accordingly, the Court finds *Electrodata Manufacturing* to be inapposite.

value of the Module at that time.  Accordingly, the Court does not find that Plaintiff's damages should be reduced by that amount.

50.  Defendant is liable to Plaintiff for the full amount of the outstanding invoice in the amount of $177,500.00 plus the Buyer's 10% premium for a total of $195,250.00 less $6,000 for Plaintiff's failure to mitigate its damages, for a total of $189,250.00.

51.  Defendant also seeks a reduction of damages by half for the "comparative fault" of plaintiff.  Comparative fault is a concept of tort law, not of contract law.

52.  In its Complaint, Plaintiff moves for attorneys' fees and all costs in his prayer for relief and his proposed conclusions of law.  Plaintiff argues that it is entitled to attorney's fees because Defendant acted in bad faith in breaching the contract.   Bad faith requires that an obligor intentionally and maliciously fail to perform its obligation.  La. C.C. art. 1997, Revision Comment (b).  "The term "bad faith" means more than mere bad judgment or negligence, it implies the conscious doing of a wrong for dishonest or morally questionable motives." *MKR Servs., L.L.C. v. Dean Hart Const., L.L.C.*, 44,456 (La. App. 2 Cir. 7/8/09), 16 So. 3d 562, 566.  The Court does not find that Davie Shoring acted in bad faith here.  Moreover, under Louisiana law, attorney's fees are not available as a consequence of a breach of contract, even a bad faith breach of contract.  *Sher v. Lafayette Ins. Co.*, 988 So. 2d 186 (La. 2008).

**III. CONCLUSION**

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant Davie Shoring, Inc. is liable to Plaintiff David Weinhoffer in the amount of $189,250.00 and prejudgment interest as allowed by law.

**IT IS SO ORDERED.**

New Orleans, Louisiana, April 14, 2023.

**WENDY B. VITTER**
**United States District Judge**