## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**DAVID WEINHOFFER, as liquidating**
**Trustee of OFFSHORE SPECIALTY**
**FABRICATORS LLC**

**CIVIL ACTION**

**VERSUS**

**NO. 19-11175**

**DAVIE SHORING, INC.**

**SECTION: D (1)**

## ORDER AND REASONS

Before the Court is a Motion for New Trial filed by the Defendant, Davie Shoring, Inc.[1] The Plaintiff, David Weinhoffer, has filed a response in opposition to the Motion.[2] Davie Shoring, Inc. filed a Reply in support of its Motion.[3] After careful consideration of the parties' memoranda, the record, and the applicable law, the Court **DENIES** the Motion.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

As the Court and the parties are well acquainted with the lengthy background of this case,[4] the Court will only recite the facts relevant to the instant Motion.

On April 14, 2023, the Court issued its Amended Findings of Fact and Conclusions of Law, finding that Defendant Davie Shoring, Inc. ("Davie" or "Defendant") was liable in the amount of $189,250.00 to Plaintiff David Weinhoffer ("Weinhoffer" or "Plaintiff").[5] This amount represents the total bid price of $177,500.00 for the 205-man housing Module that Davie failed to pay, plus a ten

---

[1] R. Doc. 147.
[2] R. Doc. 148.
[3] R. Doc. 151.
[4] *See, e.g.*, R. Doc. 142 at pp. 1–8.
[5] *Id.*

percent buyer's premium of $17,750.00, less $6,000 for Weinhoffer's failure to properly mitigate damages.[6]   The Court then ordered Weinhoffer to confer with opposing counsel and then submit a proposed Amended Judgment in accordance with the Court's Amended Findings of Fact and Conclusions of Law, which it timely did.[7]

At Weinhoffer's request, the Court held a Telephone Status Conference with the parties on April 20, 2023 at which time the parties and the Court discussed the Amended Findings of Fact and Conclusions of Law and Weinhoffer's proposed Amended Final Judgment.[8]   Counsel for Davie indicated that he objected to Weinhoffer's proposed Amended Judgment on the ground that the Court had improperly calculated the amount in damages owed to Weinhoffer by Davie.[9] Specifically, Davie argued that the Court should have deducted a ten percent buyer's premium as well as a ten percent seller's commission from the total damage amount, thereby reducing the damage award to $153,750.00.   Counsel for Weinhoffer disagreed with Davie's argument, contending that the Court's Amended Findings of Fact and Conclusions of Law, including the damages calculation, was correct. The Court informed counsel for Davie that the evidence in the record did not support the finding he was requesting in this matter and that any amounts owed by Weinhoffer to Henderson Auctions were a separate matter not before the Court.   The Court then

---

[6] *See id.* at p. 24.
[7] R. Doc. 143.
[8] R. Doc. 145.
[9] *Id.*

gave Davie until April 25, 2023 to file its own proposed Amended Final Judgment into the record.[10]  Davie did not do so.[11]

Subsequently, on April 27, 2023, the Court entered an Amended Final Judgment into the record in favor of Weinhoffer in the amount of $189,250.00 plus applicable pre- and post-judgment interest.[12]  Davie timely filed the instant Motion for New Trial on May 23, 2023, making the same arguments as it did in the April 20, 2023 Telephone Status Conference.[13]  Davie argues that the Court's damages award to Weinhoffer should be reduced by $35,500.00 because Weinhoffer is not entitled to the ten percent buyer's premium of $17,750.00 and because Weinhoffer, due to Davie's failure to perform, did not have to pay a ten percent seller's commission to Henderson Auctions.[14]  Accordingly, Davie contends that the Court's Amended Judgment gives a windfall to Weinhoffer because the damage award exceeds what Weinhoffer would have received had Davie paid the bid amount.

Weinhoffer opposes the Motion, arguing that Davie waived its right to object to the Court's Amended Final Judgment by failing to file a proposed Amended Final Judgment pursuant to the Court's April 20, 2023 Order.[15]  Weinhoffer also argues that Davie misconstrues the contract between Weinhoffer and Henderson Auctions and misunderstands the amounts owed by Weinhoffer to Henderson Auctions.[16]

---

[10] *Id.*
[11] Davie contends that it chose not to file a proposed Amended Final Judgment because it "understood this Court's Minute Entry to permit it only to file a proposed judgment if, for some reason, he objected to its form—not its substance." R. Doc. 151 at p. 3. The Court's Order speaks for itself.
[12] R. Doc. 146.
[13] R. Doc. 147.
[14] R. Doc. 147-1 at p. 1.
[15] R. Doc. 148 at pp. 3–4.
[16] *Id.* at pp. 4–7.

Weinhoffer contends that the Court correctly awarded Weinhoffer damages of $189,250.00—representing Davie's bid amount of $177,500.00, the ten percent buyer's premium of $17,750.00, and a $6,000.00 reduction for failure to mitigate damages—and that Davie is incorrect that Henderson is entitled to a double commission of a buyer's premium *and* a seller's commission.[17]  Further, Weinhoffer argues that Davie has no right to dispute the terms of the contract between Henderson Auctions and Weinhoffer because Davie is not a party to that agreement nor is Davie a third-party beneficiary.[18]  In sum, Weinhoffer maintains that Davie owes the entire $189,250.00 to Weinhoffer and that whatever sum of money is owed by Weinhoffer to Henderson Auctions is a separate matter between those parties not to be decided by this Court.

Davie filed a reply in support of its Motion, primarily arguing that it has not waived its right to file this Motion by failing to file a proposed Amended Final Judgment.[19]  Davie again contends that Weinhoffer is not entitled to recover the amounts for buyer's and seller's premiums because the sale was never consummated.[20] Lastly, Davie objects to the exhibit (R. Doc. 148-1) Weinhoffer attached to his Opposition on the grounds that the exhibit "was not admitted into evidence or even proffered at the trial of this matter[.]"[21]

---

[17] *Id*. at p. 5 n.3.
[18] *Id*. at p. 6.
[19] R. Doc. 151 at pp. 1–5.
[20] *Id*. at pp. 5–7.
[21] *Id*. at p. 7.

## II.    LEGAL STANDARD

A Rule 59(e) motion to alter or amend a judgment "serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence."[22]   A district court has "considerable discretion in deciding whether to reopen a case in response to a motion for reconsideration under" Rule 59(e).[23]  The Court is mindful that, "[r]econsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly."[24]  "[S]uch a motion is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment."[25]

"A moving party must satisfy at least one of the following four criteria to prevail on a Rule 59(e) motion: (1) the movant demonstrates the motion is necessary to correct manifest errors of law or fact upon which the judgment is based; (2) the movant presents new evidence; (3) the motion is necessary in order to prevent manifest injustice; and, (4) the motion is justified by an intervening change in the controlling law."[26]

## III.    ANALYSIS

The sole question before the Court is whether Davie is liable to Weinhoffer in the amount of $189,250.00, as the Court determined, or $153,750.00, as Davie now

---

[22] *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989).

[23] *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 174 (5th Cir. 1990), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994).

[24] *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004).

[25] *Id.* (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)).

[26] *Jupiter v. BellSouth Telecomms., Inc.*, Civ. A. No. 99-0628, 1999 WL 796218, at *1 (E.D. La. Oct. 5, 1999) (Vance, J.)) (internal quotation marks omitted); *accord Castrillo v. American Home Mortg. Servicing, Inc.*, Civ. A. No. 09-4369, 2010 WL 1424398, at *4 (E.D. La. Apr. 5, 2010) (Vance, J.) (citing authority).

argues. A brief overview of the facts of this case is necessary to answer this question. It is undisputed that Davie placed a bid of $177,500.00 to purchase the Module, a price which Davie never paid.[27] It is also undisputed that Davie was obligated to pay a buyer's premium of ten percent, or $17,750.00, in addition to the bid price of $177,500.00, for a total of $195,250.00.[28] This ten percent buyer's premium was reflected on the Module auction conditions listed on the Henderson Auctions website and also stated in the terms of the Auction Agreement (the "Agreement") entered into by Henderson Auctions and Weinhoffer.[29] According to the Agreement and based on the evidence heard and presented at trial, Davie was obligated to pay both the bid amount and the buyer's premium directly to Henderson Auctions, *i.e.*, $195,250.00 to Henderson Auctions.[30] Further, the Agreement specifies that Weinhoffer is obligated to pay Henderson Auctions ten percent of the "gross receipts from all sales of the Property."[31] Henderson Auctions is then required to remit Weinhoffer's portions of the proceeds of the auction, *i.e.* the gross receipts of the auction less ten percent.[32] Davie failed to pay anything whatsoever, prompting this litigation.

At the outset, the Court finds that Davie has not waived any argument or objection it has to the amounts specified in the Court's Final Amended Judgement. Although the Court, with the understanding that Davie objected to the damage amounts specified in the Court's Amended Findings of Fact and Conclusions of Law,

---

[27] *See* R. Doc. 142 at p. 4 ¶ 10.
[28] *See id.* at p. 4 ¶ 11.
[29] *See* R. Doc. 122-5 at p. 2 (Auction Terms); R. Doc. 122 (Auction Agreement).
[30] *See* R. Doc. 142 at p. 17 ¶ 36.
[31] *See* R. Doc. 122 (Auction Agreement).
[32] *See id.*

gave Davie until April 25, 2023 to file its own proposed Final Amended Judgment, the Court did not order Davie to file anything.[33]   Moreover, the Court agrees with Davie's contention that the proper procedural vehicle for challenging a court's judgment is through a Rule 59 motion for a new trial and/or to alter and amend a judgment.[34]   Further, the Court finds that the case law cited by Weinhoffer is inapposite as this case does not involve a consent judgment.[35]   That Davie failed to file its own proposed Amended Final Judgment does not preclude it from filing the instant Motion.

As to the merits of Davie's Motion, the Court finds that the Motion should be denied as Davie merely rehashes arguments that this Court has already considered and rejected.   But even if the Court were to consider Davie's contentions, the Court finds that Davie's argument is flawed in several respects.   First, Davie treats the ten percent buyer's premium and the ten percent seller's commission as though Henderson Auctions is entitled to a double commission of $35,500.00 from the aggregate $195,250.00 owed by Davie.[36]   Put differently, Davie contends that Henderson Auctions is entitled to the entirety of the ten percent buyer's premium— $17,750.00—and is also entitled to a ten percent sellers premium reflecting an additional ten percent of the total bid amount, or $17,750.00.   As Davie states: "It is undisputed that, had Davie paid the auction price of $177,500.00, Plaintiff would

---

[33] *See* R. Doc. 145 ("IT IS HEREBY ORDERED that the Defendant shall have until Tuesday, April 25, 2023 to file its proposed Amended Final Judgment into the record.").

[34] *See* R. Doc. 151 at p. 5; Fed. R. Civ. P. 59(e).

[35] *See* R. Doc. 148 at pp. 2, 4 (citing *Lee v. Dallas County Board of Education*, 578 F.2d 1177, 1179 (5th Cir. 1978) and *I & I Hair Corp. v. Beauty Plus Trading Co.*, Civil Action No. 3:18-cv-03254-M, 2019 WL 7838077, at *4 (N.D. Tex. Sep. 13, 2019)).

[36] *See* R. Doc. 147 at pp. 1, 3.

have received $159,750.00 (the bid price minus the seller's premium owed by Plaintiff to Henderson), and Henderson would have received the buyer's premium of $17,750.00 from Davie."[37]

Davie cites to no evidence in the record to support this understanding of the Agreement entered into by Henderson Auctions and Weinhoffer. Nor does the Agreement support such a reading. Further, contrary to Davie's assertion, Weinhoffer *does* dispute Davie's interpretation, arguing that Henderson Auctions is entitled to only a single ten percent commission of $17,750.00.[38] The Court finds it appropriate to consider the language of the Agreement. While Davie is correct that the Agreement reflects that Henderson Auctions "will charge a 10% Buyer Premium to the winning bidder of each lot sold"[39] and that Weinhoffer agreed to pay Henderson Auctions "a commission of 10% of the gross receipts from all sales of the Property,"[40] nothing in the Agreement suggests the sort of double-dipping into the bid amount that Davie claims. Indeed, the natural reading of the Agreement is that the buyer's premium and the seller's commission are, in effect, one and the same such that the ten percent buyer's premium is paid as the ten percent seller's commission as part of the "gross receipts" of the auction to Henderson Auctions. That is, the gross receipts include the bid amount in addition to the ten percent buyer's premium.[41]

---

[37] *Id.* at p. 3.
[38] *See* R. Doc. 148 at p. 5, n.3 ("In plaintiff's view, if the contracts are correctly interpreted, then if Davie Shoring had honored the contracts, Henderson would have received a single 10% commission of $17,750, not a double commission.")
[39] *See* R. Doc. 122.
[40] *See id.*
[41] Had the parties intended for the ten percent seller's commission to be paid only on the bid amount, the parties could have so specified. But they chose the term "gross receipts" instead, suggesting that the bid amount alone is not the operative amount.

The facts of this case support the Court's finding. As discussed above, it is undisputed that Davie owed Henderson Auctions $177,500.00 for the bid plus a buyer's premium of $17,750.00, for a total of $195,250.00. By the terms of the Agreement, Weinhoffer owed Henderson Auctions ten percent of the gross receipts of $195,250.00 as a seller's commission. Thus, had the sale gone through and the Agreement been followed, Weinhoffer would have walked away with $175,725.00 and Henderson Auctions with $19,525.00. Davie has provided nothing to substantiate its argument that a ten percent commission is deducted twice from the total amount.[42]

Even if Davie's interpretation of the Agreement is correct such that Weinhoffer would have walked away with only $159,750.00 had Davie fulfilled its obligation and paid for its bid, the Court finds that Weinhoffer is still entitled to an award of $189,250.00. In essence, Davie would have the Court award Weinhoffer only the amount of money that Weinhoffer would have received had the sale gone through and after any amounts owed to Henderson Auctions had been paid. Importantly, whatever money is owed by Weinhoffer to Henderson Auctions—whether it be the ten percent buyer's premium or the ten percent seller's premium or both—is solely a matter of contract for Weinhoffer and Henderson Auctions to sort out themselves. Again, Davie is not a party to that Agreement and has no standing to enforce that

---

[42] Although not dispositive of the issue, at trial Weinhoffer testified that it was his understanding that the ten percent commission paid to Henderson Auctions was not subtracted from the bid price of $177,500. *See* R. Doc. 123 at 190:22–25 (Trial Testimony of David Weinhoffer). Further, Weinhoffer testified that, in the event that a judgment was rendered in his favor, that he intended to pay Henderson Auctions "10 percent of whatever the net amount is minus the fees, legal fees." *See id.* at 191:1–6.

agreement.[43]   Although the Court understands Davie's argument to be that the Court's damages award puts Weinhoffer in a better position than if Davie had gone through with its commitment, to the extent that Weinhoffer receives any windfall in this matter, that will be due to the actions or inactions of Henderson Auctions to collect what may have been owed, not the Court.[44]   Whether or not Henderson Auctions actually pursues its share of the "gross receipts" of the Module is outside the scope of this litigation.[45]   That is not before this Court.   Further, Davie's argument that Weinhoffer does not owe Henderson Auctions any seller's commission because the sale was never consummated, and therefore that Weinhoffer is not entitled to receive the amount of any seller's commission to cover any payment to Henderson Auctions, asks the Court to construe the Agreement in a manner that affects the contractual rights of parties not before the Court on an issue that has not been briefed.   The Court concurs with Weinhoffer that any amounts potentially due by Weinhoffer to Henderson Auctions do not constitute "expenses saved" within the

---

[43] *See, e.g.*, *Johnson v. Am. Sec. Ins. Co.*, No. CV 22-3675, 2023 WL 143325, at *3 (E.D. La. Jan. 10, 2023) (Vitter, J.) (explaining that a non-party to a contract lacks the ability to enforce the contract).

[44] Suppose Party A and Party B contract such that Party A agrees to pay Party B $100,000 for an item within Party B's possession.   Further suppose that Party C has separately and independently contracted with Party B such that Party C is entitled to fifty percent of the gross revenue of Party B's item should Party B sell its item.   Assuming Party A breaches its contract with Party B by refusing to pay for the item, Party A cannot claim that they are only liable to Party B for $50,000 because that is all Party B would have ultimately received had the agreement been followed and had Party C enforced its own agreement with Party B.   Whether or not Party C chooses to assert its own rights under its contract cannot control the amount by which Party A is liable to Party B.

[45] In its Reply Memorandum, Davie asserts for the first time in this litigation that "Henderson does not have a claim and cannot bring one against Plaintiff for the seller's premium" due to a settlement agreement between Weinhoffer and Henderson Auctions in an entirely separate bankruptcy suit in the United States District Court for the Southern District of Texas. R. Doc. 151 at p. 6 n.2.   Given the scant information about this purported settlement agreement, the Court does not find it appropriate to reduce any damage award to Weinhoffer based on any separate agreement with Henderson Auctions.   Again, the extent to which Henderson Auctions asserts whatever rights it has against Weinhoffer pursuant to the Auction Agreement is an issue not before the Court and does not impact the amount of damages owed by Davie to Weinhoffer.

meaning of La. C.C. art. 2611 because the default of Davie does not extinguish the legal rights and obligations of Weinhoffer and Henderson Auctions vis-à-vis one another.[46]

At bottom, Davie undisputedly is liable for the entire bid amount and ten percent buyer's premium, less $6,000.00 for Weinhoffer's failure to mitigate damages. Davie cannot lean on the Agreement to limit the amount in damages it owes to Weinhoffer. Davie has not demonstrated good reason for this Court to amend its prior Amended Final Judgment and Amended Findings of Fact and Conclusions of Law pursuant to Fed. R. Civ. P. 59(e).  Accordingly, the Court denies Davie's Motion.

## IV.  CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant Davie Shoring, Inc.'s Motion for New Trial[47] is **DENIED**.

New Orleans, Louisiana, July 11, 2023.

**WENDY B. VITTER**
**United States District Judge**

---

[46] *See* R. Doc. 148 at p. 6.
[47] R. Doc. 147.